An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA26-135

Filed 5 August 2026

Columbus County, No. 25JT001041-230

IN RE:

L.S.
A Minor Child

Appeal by respondent-mother and respondent-father from order entered 12 November 2025 by Judge J. Calvin Chandler in Columbus County District Court. Heard in the Court of Appeals 21 July 2026.

*Mercedes O. Chut for respondent-appellant mother.*

*Rebekah W. Davis for respondent-appellant father.*

*Michelle FormyDuval Lynch for guardian ad litem.*

*No brief filed by petitioner-appellee Columbus County Department of Social Services.*

PER CURIAM.

## I.    Background

Lydia[1] was born in August 2024. At the time of birth, Respondent-Mother ("Mother") and Lydia tested positive for buprenorphine and cocaine. Lydia was

---

[1] A pseudonym.

treated for drug withdrawal. On 28 August 2024, Columbus County Department of Social Services ("DSS") filed a petition alleging that Lydia was neglected and dependent and assumed nonsecure custody. Soon after, Lydia was placed with foster parents in a nearby county.

Lydia has an older brother, Tim[2] who was also in the custody of DSS when Lydia was born. Mother and Respondent-Father's ("Father") ability to visit Tim stopped on 9 October 2024 and reunification efforts ceased.

At an adjudication hearing on 30 October 2024, Lydia was adjudicated neglected. The claim of dependency was dismissed, as the evidence provided did not show Lydia was a dependent juvenile as defined by N.C.G.S. § 7B-101(9). Mother and Father entered into a reunification plan regarding Lydia with the following components:

> a. Obtain a mental health assessment, enroll in, and successfully complete the recommendations for treatment pursuant to the assessment[;]
>
> b. Obtain a substance abuse assessment, enroll in and successfully complete the recommendations for treatment pursuant to the assessment[;]
>
> c. Obtain and maintain stable, safe housing;
>
> d. Obtain and maintain stable employment;
>
> e. Submit to random drug screening at the request of [DSS] or the substance abuse treatment provider; and

---

[2] A pseudonym.

f. Enroll in and successfully complete parenting classes.

The court further required parents to "take any medication that is lawfully prescribed for each respondent parent in strict compliance with the instructions on the prescription bottle[,]" and "not to use, possess, or consume any illegal controlled substances or prescription medication unless respondent parent has a valid or current prescription, the medication is in the original container with the prescription label attached thereto, and the medication is to be taken in strict compliance with the instructions on the label." The court ordered that both parents were provided weekly supervised visits with Lydia for one hour at an agreed-upon place.

A permanency planning hearing took place on 27 January 2025. At the hearing, the court found both parents had failed to visit with Lydia since 11 October 2024. DSS reports showed the parents were "no-shows" for all scheduled visits from 11 October 2024 to 27 January 2025. Further, at the time of the hearing, Mother had not participated in any substance abuse treatments, which was a major concern of the Court. In the order, the court made the following findings:

> a. Respondent parents are not making adequate progress within a reasonable period of time on their case plans.
>
> b. Respondent parents are not actively participating in the plan for the juveniles and are not cooperating with [DSS], and the GAL.
>
> c. Respondent parents are not available to this Court, [DSS], and GAL.
>
> d. Respondent parents are acting in a manner inconsistent

with the health, and safety of the juveniles.

After the permanency planning hearing, visits between the parents and Lydia were no longer allowed and reunification efforts ceased. The court ordered that the permanent plan for Lydia and her brother was custody with a court approved caretaker and the secondary plan was guardianship.

The next permanency planning hearing was held on 27 May 2025. Mother was present, but Father was not. Evidence presented at the hearing showed that DSS and GAL were unable to contact parents between the hearings. The Court's findings pertaining to the Mother's progress were as follows:

> 26. [Mother] has completed the component of stable housing in her case plan.
>
> 27. [Mother] has not engaged in substance abuse or mental health treatment since the last hearing on this matter[.]
>
> 28. [Mother] made contact approximately three weeks ago with [a treatment center] to schedule and resume treatment. However, she did not engage in treatment.
>
> 29. [Mother] is currently taking buprenorphine without a valid prescription.
>
> 30. [Mother] desires to attend inpatient treatment. Yet, she has made no steps to enroll in treatment.
>
> 31. [Mother] worked for [a home cleaning company] during January and February, 2025.
>
> 32. [Mother] lost her cell phone for 3 to 4 months and recently acquired a new phone in March 2025.
>
> 33. While [Mother] was without a cell phone she had internet Wi-Fi access at her home and had no desire to

communicate with juveniles. Yet, was able to play video games on X Box.

34. [Mother] stopped treatment due to being upset with provider.

The court made no findings regarding Father's progress. The court found that the best permanent plans were a primary plan of adoption and a secondary plan of guardianship with a court approved guardian.

On 4 August 2025, DSS filed a motion to terminate both Mother and Father's parental rights to Lydia. The motion alleged grounds of neglect and abandonment. The termination petition was heard on 1 October 2025. The orders of adjudication and disposition were entered 12 November 2025, terminating both parents' parental rights on the ground of abandonment. Father filed notice of appeal on 26 November 2025. Mother filed notice of appeal on 8 December 2025.

## II. Analysis

There are two distinct stages involved in a termination of parental rights proceeding: the adjudication stage and the disposition stage. "At the adjudication stage, the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." *In re Young*, 346 N.C. 244, 247 (1997). If "[a] trial court's finding of fact . . . is supported by clear, cogent, and convincing evidence[, it will be] deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019). "We review whether the findings of fact support

the conclusions of law, and conclusions of law are reviewed de novo." *Matter of S.R.,* 384 N.C. 516, 520 (2023) (citation omitted). "At the dispositional stage, the trial court's assessment of the best interests of the child is reviewed for abuse of discretion." *Id.* "[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re C.B.*, 375 N.C. 556, 560 (2020).

First, Mother and Father both contend the trial court erred by concluding Mother and Father abandoned Lydia because they had no ability to visit or contact Lydia during the relevant period of time.

A trial court may terminate a parent's parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C.G.S. § 7B-1111(a)(7) (2025). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. 244, 251 (1997). "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501 (1962). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." *Matter of B.C.B.,* 374 N.C. 32, 35 (2020) (quoting *In re Adoption of Searle,* 82 N.C. App. 273, 276 (1986)).

Here, the relevant six-month period for abandonment was 5 February 2025 to 4 August 2025. The challenged findings are as follows:

> 24. A visitation plan was established, allowing respondent parents to visit with the Juvenile for two hours each week at DSS.
>
> 25. The respondent parents had the opportunity to visit at the initial permanency planning hearing.
>
> 26. The respondent parents have not visited with the juvenile since 11 October 2024.
>
> 28. During the six months preceding the filing of this action and from February 5, 2025, to August 4, 2005, the parents did not visit the minor child. The May 27, 2025, order in this case prohibited visitation. However, the respondent parents did not exercise any visits from October 11, 2024, until the entry of that order thought they had the ability and right to do so. During the six months prior to the filing of this action, the respondent parents did not provide any letters to the juvenile, did not make any phone calls to the juvenile, provided no clothing for the juvenile, provided no food or health care for the juvenile, and provided no love or compassion or companionship to the minor child.
>
> 29. During the six months prior to the filing of this action, Respondent parents did not make regular inquiries into the well-being of the juvenile, whether that be to [the Foster Parents] or to the [DSS] social worker.
>
> 30. That the parents had the ability to communicate and visit with the minor child but failed to avail themselves of the same. The lack of visitation or communication with the minor child is not due to poverty.
>
> 31. Respondent parents willfully abandoned the minor child for at least six consecutive months immediately preceding the filing of the petition in this case.

Mother challenges Finding 24 stating the scheduled visits were not two hours.

Mother is correct that the scheduled visits were for one-hour weekly visits, not two-hour visits.

Both Mother and Father challenge Finding 25 stating there was no evidence they had the opportunity to visit Lydia at the initial permanency planning hearing. However, both parents failed to appear at that hearing. Therefore, they were not there to know whether they were provided with that opportunity. Regardless, the initial permanency hearing was held on 27 January 2025, outside of the six-month period relevant to abandonment.

Mother challenges Finding 26, arguing "the trial court did not receive sufficient evidence to find that the parents had the ability to visit[.]" However, Finding 26 merely states that parents did not visit with juvenile since 22 October 2024. The trial court does not speak about parents' ability to visit, therefore the argument is irrelevant.

Both parents challenge Finding 28 arguing there is a clerical error in the finding regarding the date that visits with Lydia were ceased. Mother is correct that court ordered visitations ceased at the 27 January 2025 hearing.

Mother and Father also challenge Findings 28, 29, and 30 stating that including Lydia in their lives was not possible because of the barriers set in place by DSS. However, based on a review of the record, there were no court orders or elements of the case plan which prevented parents from attempting to contact or visit Lydia. Both Mother and Father knew how to get in contact with DSS and could have

reached out to inquire about seeing Lydia. Additionally, neither parent provided the court with an explanation for their failure to attend scheduled visitations nor did either parent ask for assistance to attend scheduled visitations. Additionally, the foster parents for both Lydia and Tim stated that the parents had access to their contact information and could have reached out. Based on the reasoning stated above, we hold the trial court did not err in adjudicating Lydia abandoned.

Next, Mother and Father argue the trial court abused its discretion in terminating their parental rights. Father specifically argues the trial court erred in terminating his parental rights under N.C.G.S. §7B-1111(a)(1). As previously stated, the dispositional stage is reviewed for abuse of discretion. *Matter of S.R.,* 384 N.C. at 520.

Our General Statute states:

> The court may terminate the parental rights upon a finding of one or more of the following: (1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101.

N.C.G.S. §7B-1111(a)(1) (2025). Section 7B-101 of our Statutes states that a juvenile may be adjudicated neglected if the parent "has abandoned the juvenile[.]" N.C.G.S. §7B-101(15)(b) (2025).

Because we hold that the finding that Lydia was adjudicated abandoned is supported by clear, cogent, and convincing evidence, and abandonment is grounds for

termination pursuant to N.C.G.S. §7B-1111(a)(1), we hold the trial court did not abuse its discretion in terminating both Mother and Father's parental rights.

### III.    Conclusion

For the reasoning stated above, we affirm the trial courts orders and hold the trial court did not abuse its discretion in terminating both Mother and Father's parental rights.

AFFIRMED.

Panel consisting of Chief Judge DILLON and Judges STADING and FREEMAN.

Report per Rule 30(e).